NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JEANETTE SANZ, | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 11-CV-5592 (DMC) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendants. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the appeal of Jeanette Sanz ("Plaintiff" or "Claimant") from the final decision of the Commissioner of Social Security ("Commissioner"), denying Claimant's claims for a period of disability and disability insurance benefits under Title II of the Social Security Act ("Act"), her application for supplemental security income under Title XVI of the Act, and upon two decisions of Administrative Law Judge (ALJ) Dennis O'Leary after a First and Second Remand. This Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure.

After reviewing the submissions to this Court by both parties, the final decision entered by the ALJ is **affirmed**.

1

I. **BACKGROUND**

    A. PROCEDURAL HISTORY

On January 3, 2008, Plaintiff Ms. Jeannette Sanz filed an application for Supplemental Social Security ("SSI") and Social Security Disability ("SSDI") benefits. The Claim was initially denied on April 20, 2008 and then denied again on reconsideration on July 1, 2008. (Transcript ("Tr.") 61, 65, 77). Plaintiff then appealed by filing a request for hearing before an Administrative Law Judge. On November 19, 2009, a hearing on the Plaintiff's claims was held in Newark, New Jersey before Administrative Law Judge ("ALJ") Dennis O'Leary. On December 10, 2009, ALJ O'Leary issued a denial of Plaintiff's claims for SSI and SSDI benefits. (Tr. 17). Plaintiff filed a timely appeal to the Appeals Council, which denied Plaintiff's appeal in a decision dated July 28, 2011. The subsequent and instant appeal was filed on September 26, 2011. (Tr. 1). Plaintiff alleges onset date of July 2, 2005. (Tr. 61). For the purposes of the SSDI claim, Plaintiff has a Date Last Insured of December 31, 2011. (Id.).

    B. FACTUAL HISTORY

        **1.    The Findings of the Administrative Law Judge**

ALJ O'Leary made the following seven findings regarding the Plaintiff's application for a period of disability and disability insurance benefits: 1) the Claimant meets the insured status requirements of the Social Security Act through June 30, 2010; 2) the Claimant has not engaged in substantial gainful activity since July 2, 2005; the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*) 3) the Claimant has the following severe impairment: affective disorder (20 C.F.R. 404.1520(c) and 416.920(c)); 4) the Claimant does not have an impairment or combination of

2

impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404 §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926); 5) the Claimant has residual functional capacity to perform the full range of work at all exertional levels; 6) the Claimant is capable of performing past relevant work as a cashier and that this work does not require the performance of any activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565 and 416.965); 7) the Claimant has not been under as a disability, as defined in the Social Security Act, from July 2, 2005 through December 10, 2009, the date of the decision. (20 C.F.R. 404.1520(f) and 416.920(f)).

## 2.   Plaintiff's Medical History and Evidence

Plaintiff's disability claims since July 2, 2005, have been related to affective disorders (mental) with some negative effects from prescribed medications. (Tr. 149, 153, 160). Plaintiff's medical history is summarized below under headings depicting provider/facility providing treatment/care.

### a.   *Immediate Care PC*

Plaintiff received treatment for: viral syndrome, depression, anxiety, and other health issues at this primary care facility from April 26, 2004 to September 4, 2008. Her appetite and sleep patterns were frequently disturbed, resulting in complications that further exacerbated her underlying condition. As a result, Plaintiff often missed work and eventually ceased working completely.

### b.   *Dr. Ernesto Perdomo*

On March 21, 2008, Plaintiff was examined by Dr. Perdomo, a licensed psychologist. Plaintiff complained of crying spells, waning motivation, mood swings, anger, and sleep disturbances. (Tr. 292). The results of this exam indicated that Plaintiff's mood was depressed, her

3

memory and concentration were fair, and that while performing tests involving sequential numbering, Plaintiff would cry without evident provocation or control. (Id.). Dr. Perdomo diagnosed Plaintiff with recurrent major depression and gave her a GAF of 60 to 65. (Tr. 295).

      c.     *Rakeesh Bansil*

On March 28, 2008, The Commissioner employed Rakeesh Bansil to produce a functional capacity assessment (Tr. 311) wherein he noted that Ms. Sanz showed moderate limitations in: maintaining a schedule, remaining punctual, maintaining a normal work week without interruption, and responding appropriately to changes in work day routine. (Tr. 311-312). His report suggested mild limitations overall and the same with specific attention to concentration, persistence, and pace. (Id. and Tr. 307).

      d.     *Jersey City Medical Center & North Hudson Community Action*

On April 15, 2008, Ms. Sanz went to Jersey City Medical Center emergency room due to depressive and anxiety-related symptoms. Her specific complaints included the following: decreased sleep, cognitive impairments, appetite disturbances, crying spells, and myriad emotional disturbances. Ms. Sanz was consequently enrolled in an outpatient program of care aimed at alleviating these symptoms. On June 2, August 5, and October 10, 2008, Ms. Sanz presented with similar symptoms at North Hudson Community Action and received psychiatric care which was noted by her treating physician (Tr. 343-344, 352).

      e.     *Mental Residual Capacity Questionnaire (MRFC)*

(i) On March 28, 2008, Dr. Bansil completed a MRFC to precisely record any and all detriments related to Ms. Sanz's mental health. Dr. Bansil noted no significant mental or emotional disturbance that would meet or equal a listing. The doctor noted that with

4

treatment Ms. Sanz should respond well and her condition should improve. Dr. Bansil noted that, despite being hospitalized for psychiatric reasons, Ms. Sanz was not undergoing any psychiatric treatment at the time of examination. He also noted a history of alcohol and marijuana abuse and that an RFC assessment is necessary for Ms. Sanz's file.

(ii) On September 15, 2009, Dr. Griswold completed a MRFC to precisely record any and all detriments related to Ms. Sanz's mental health. Dr. Griswold hereby diagnosed Ms. Sanz with major depressive disorder and post-traumatic stress disorder (PTSD) with a Global Assessment of Functioning ("GAF") of 55. (Id.). He also noted that side effects of medications taken by Ms. Sanz caused drowsiness and fatigue, both affecting her abilities to concentrate, form stable relationships, and sleep properly. Dr. Griswold further noted that Ms. Sanz's anxiety and PTSD symptoms affect interactions with others and cause instability in her overall mood. These, he opined, would make her unable to meet competitive, attendance, and coping standards required for her to remain gainfully employed in an *unskilled* job. In a *semi-skilled* job, Dr. Griswold wrote that Ms. Sanz would suffer limitations due to the same symptoms. In addition, Ms. Sanz's inability to maintain socially appropriate behavior would be a factor in a *semi-skilled* setting. Her susceptibility to decompensation resulting from her psychiatric impairments would cause her to be absent from work for four days each month, according to Dr. Griswold (Tr. 512-513). The doctor noted that substance abuse did not contribute to her symptoms (Tr. 513).

3. **Disability Reports from Plaintiff, Field Office and Appeals Council**

The record contains several disability reports. The first disability report comes from the field office dated January 14, 2008. (Tr. 140). The interview was conducted in person, and Plaintiff had no difficulty in hearing, reading, breathing, understanding, coherency, concentrating, talking,

answering, sitting, standing, walking, seeing, using hand(s) and writing. (Tr. 139). The interviewer described the Plaintiff as being "neatly dressed and cooperative" and as crying a little at the onset of the interview but not having difficulty answering questions during the interview.

The next disability report in the record is a disability report to the Appeals Council from the Plaintiff. This form is undated. In this report, the Plaintiff lists her illness, injuries, or conditions and how they limit her ability to work. (Tr. 142). She states that her Major Depressive Disorder causes her to be unable to be around people "because I become anxious, I get panicky and I cry a lot." Id. Plaintiff claims that the onset date is July 2, 2005, and admits to not working once the symptoms interfered with her ability to work. Id. Plaintiff listed July 2, 2005, as the last date of work. (Tr. 142). In describing her employment, Plaintiff has worked in various industries ranging from receptionist at a furniture store to cashier in retail. (Tr. 143). The longest job Plaintiff has held is home health aid at a hospital, where she visited patients and cared for them by helping to perform daily chores. Id. She was also required to stand, sit, stoop, crouch, reach, and handle objects for one hour per day. She was required to walk for two hours per day. Id. In this report, Plaintiff mentioned that she frequently lifted "25 pounds" and that the heaviest weight lifted was about "50 pounds." Id.

The final disability report comes from the field office dated May 20, 2008. (Tr. 158). The interview was conducted in person, and Plaintiff had no difficulty in hearing, reading, breathing, understanding, coherency, concentrating, talking, answering, sitting, standing, walking, seeing, using hand(s) and writing. (Tr. 157). The interviewer described the Plaintiff as being "very anxious, very talkative" and "would get very emotional". (Tr. 157).

    *i.*     **Plaintiff Jeanette Sanz's Testimony**

Plaintiff testified at the ALJ hearing on November 19, 2009. (Tr. 32). The Plaintiff's

attorney, Abeer Abu Judeh (phonetic), was present. Plaintiff testified that she is thirty-three years old and has an eighth grade education. (Tr. 36). Plaintiff was questioned by ALJ O'Leary as to the intrusiveness of her alleged bouts with emotional and mental problems and their effect on her ability to retain consistent employment. (Tr. 38 - 39). Plaintiff answered, in response to ALJ O'Leary's questions regarding her employment-related symptoms, that "I cry a lot. Sometimes I forget things. I'm really tired most of the time because of the medication that they [sic] take to try to control my moods." (Tr. 39).

Plaintiff testified further about her physical state and her current treatment. She stated that she often forgets to complete routine tasks such as: turning off the stove, completing household chores, ensuring safety/preventing fires/smoke, and forgetting to bring her son's jacket or scarf when dropping him off for school. (Tr. 39).

Plaintiff then answered questions about her life at home. First, she answered that she lives with her three children and is their sole guardian. (Tr. 43). All three of these children have asthma and one has Graves Disease. Id. Two children go to school and one goes to a pre-school called The Abbott Program. (Tr. 44). Plaintiff mentioned that she could not resume her previous employment due to her inability to remain emotionally stable and maintain concentration. (Tr. 44-45).

Plaintiff's attorney then asked Plaintiff to describe specific instances of her work as a medical aid. Plaintiff answered that she was often relied on to be a companion to those who were terminally ill or otherwise incapacitated. (Tr. 46-47). She stated that, "(I)t's kind of hard to be a companion with someone ... with their own issues ... I have to deal with being around them all the time." (Tr. 47). Plaintiff goes on to describe her medication schedule by answering that she takes 300 milligrams of Wellbutrin as well as (an unknown amount of) Depakote. The attorney then asked

7

Plaintiff about her socialization skills and coping mechanisms. (Tr. 50). Plaintiff answered that "I cry about a lot of things. Sometimes I look at my kids and I cry, because I know that I want to do things for them but I can't sometimes." (Tr. 50). Plaintiff then spoke about how she has been cited by DYFS for not caring properly for her children. (Tr. 51-53).

## II. STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla . . . but may be less than a preponderance." Woody v. Sec'y of Health & Human Servs, 859 F.2d 1156, 1159 (3d Cir. 1988). It "does not mean a large or considerable amount of evidence, but rather such relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citation omitted). Not all evidence is considered "substantial." For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence–particularly certain types of evidence (e.g. that offered by treating physicians)–or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Sec'y of Health, Educ. & Welfare, 714 F.2d 287, 290 (3d Cir. 1983).

The "substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). As such, it does not matter if this Court "acting *de novo* might

have reached a different conclusion" than the Commissioner. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). "The district court . . . is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)). A Court must nevertheless "review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). In doing so, the Court "must 'take into account whatever in the record fairly detracts from its weight.'" Id. (quoting Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).

To properly review the findings of the ALJ, the court needs access to the ALJ's reasoning. Accordingly,

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)). A court must further assess whether the ALJ, when confronted with conflicting evidence, "adequately explain[ed] in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). If the ALJ fails to properly indicate why evidence was rejected, the court is not permitted to determine whether the evidence was discredited or simply ignored. See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).

### III. APPLICABLE LAW

#### A. THE FIVE-STEP PROCESS

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382. A claimant is considered disabled under the Social Security Act if he or she is unable to "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). A claimant bears the burden of establishing his or her disability. Id. § 423(d)(5).

To make a disability determination, the Commissioner follows a five-step process pursuant to 20 C.F.R. § 416.920(a). Under the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). Substantial gainful activity is work that involves doing significant and productive physical or mental duties, and is done (or intended) for pay or profit. 20 C.F.R. § 416.972. If the claimant establishes that she is not currently engaged in such activity, the Commissioner then determines whether, under step two, the claimant suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). The severe impairment or combination of impairments must "significantly limit[] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). The impairment or combination of impairments "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 416.909. If the Commissioner finds a severe impairment or combination of impairments, he then proceeds to step three, where he must determine whether the claimant's impairment(s) is equal to or exceeds one of those included in the Listing of Impairments in Appendix 1 of the regulations ("Listings"). 20 C.F.R. § 416.920(d). Upon such a

finding, the claimant is presumed to be disabled and is automatically entitled to benefits. Id. If, however, the claimant does not meet this burden, the Commissioner moves to the final two steps.

Step four requires the Commissioner to determine whether the claimant's residual functional capacity sufficiently allows her to resume her previous work. 20 C.F.R. § 416.920(e). If the claimant can return to her previous work, then she is not disabled and therefore cannot obtain benefits. Id. If, however, the Commissioner determines that the claimant is unable to return to her prior work, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner, who must find that the Claimant can perform other work consistent with her medical impairments, age, education, past work experience and residual functional capacity. 20 C.F.R. § 416.920(g). Should the Commissioner fail to meet this burden, the claimant is entitled to social security benefits. 20 C.F.R. § 416.920(a)(4)(v).

### B. THE REQUIREMENT OF OBJECTIVE EVIDENCE

Under the Act, disability must be established by objective medical evidence. "An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). Notably, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." Id. Specifically, a finding that one is disabled requires:

> [M]edical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id. Credibility is a significant factor. When examining the record "the adjudicator must evaluate

11

the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186 (July 2, 1996). To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. Id. The requirement for a finding of credibility is found in 20 C.F.R. § 416.929(c)(4). A claimant's symptoms, then, may be discredited "unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

### IV. ANALYSIS

On appeal, Plaintiff makes three arguments as to why the ALJ's decision should be reversed. First, Plaintiff argues that the Commissioner failed to evaluate all of the Plaintiff's symptoms as required by law. Second, Plaintiff argues that the Commissioner erred as a matter of law in the manner he evaluated the non-exertional impairments in this case. Third, Plaintiff argues that Commissioner failed to weigh the medical opinion evidence as required by the law and that his conclusions are not supported by substantial evidence. (Pl. Br. 5, 17, 18, 20).

#### A. PLAINTIFF'S ANXIETY

The regulations at 20 C.F.R. § 404.1529(a) require the Commissioner to consider all symptoms reported by the claimant, treating sources, and those indicated by medically acceptable clinical techniques. Plaintiff argues that ALJ O'Leary failed to account for Ms. Sanz's anxiety in his decision (Tr. 17-31). Plaintiff argues that while the evidence of her anxiety is well documented, the ALJ didn't evaluate said symptoms in his evaluation.

In Hur v. Barnhart, 94 Fed. App'x 130, 133 (3d Cir. 2004), the Court found

> Although we do not expect the ALJ to make reference to every relevant treatment note in a case where the claimant. . . has voluminous medical records, we do expect the ALJ, as the factfinder, to consider and evaluate all the medical evidence in the record consistent with his responsibilities under the regulations and case law.

Here, while the ALJ may not have specifically used the word "anxiety," he clearly considered and evaluated Plaintiff's symptoms. He noted her inability to work "due to too many stressors in her life" and that "she cries a lot and can't be around people." (Tr. 24). Additionally, the ALJ referenced and evaluated all evidence and sufficiently explained the weight he gave the opinion evidence. The ALJ's analysis is sufficient, and under the substantial evidence standard does not find the lack of the word "anxiety" to warrant remand.

### B. NON-EXERTIONAL IMPAIRMENTS

Plaintiff next argues that the ALJ erred by failing to obtain the testimony of a vocational expert (VE) and by failing to give notice of the ALJ's conclusion that Plaintiff's non-exertional limitations did not significantly erode the occupational base. (Pl.'s Br. 18-20). The Commissioner agrees that because the ALJ specifically asserted non-exertional limitations, he was required to either obtain VE testimony or give notice of his intent to take administrative notice of the fact that non-exertional limitations did not significantly erode the occupational job base at the fifth step o the sequential evaluation. (Def.'s Reply 13; see Acquiescence Ruling 01-1(3). However, remand is not warranted because the ALJ properly found that Plaintiff could perform her past relevant work at step four, and thus the burden of proof never shifted to the Commissioner. See Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999) (citing Adorno v. Shalala, 40 F.3d 43, 46, (3d Cir. 1994) (claimant seeking benefits under the Act bears the burden of demonstrating an inability to return to her past relevant work); see also Johnson v.Comm'r of Soc. Sec., 529 F.3d at 205 (noting that at step five,

the burden shifts to the Commissioner to show that other jobs exist that the claimant could perform and advisory testimony is often sought from a vocational expert for that purpose). VE testimony is not required at step four; the Commissioner's regulations state only that it "may be helpful."20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); see also SSR 00-4p (providing that at steps 4 and 5 "[w]e may also use VEs ... to resolve complex vocational issues"); Lopez v. Comm'r of Soc. Sec., 270 Fed. Appx 119, 123 (3d Cir. 2008) (citations omitted) (at step four, the decision to use a vocational expert is at the discretion of the ALJ). As the ALJ determined that Plaintiff had the proper RFC to return to her past work, he never needed to reach step five. Thus any contention that the ALJ improperly failed to use a VE is meritless. See Torres v. Comm'r of Soc. Sec., No 10-4623, 2011 WL 6306593 at *6 (D.N.J. Dec. 14, 2011).

### C. WEIGHT OF MEDICAL OPINIONS

Plaintiff asserts that treating physicians' records and findings should be given more weight in this analysis. The Third Circuit rule is that an "ALJ should give treating physicians' reports great weight, 'especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" Brownawell v. Astrue, 554 F.3d 352, 355 (3d Cir. 2008), citing Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999)). Plaintiff argues that ALJ O'Leary gave "no significant weight" to Dr. Griswold's testimony, a clinical psychologist, who has been treating Ms. Sanz for over a year. (Tr. 25). Further, Plaintiff argues that the reasons the ALJ provided for such a diminution are not based on substantial evidence. (Pl. Br. 22).

Under the treating source, a treating source's opinion is due controlling weight only where it is both well-supported and not inconsistent with other susbtantial evidence in the case record. 20

14

C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p. The ALJ properly noted that there was substantial evidence in the record that was inconsistent with Dr. Griswold's opinion. (Tr. 25). When a treating source's opinion is not due controlling weight, it is the ALJ's role to consider the evidence and assign weight to the medical opinions of record. Brown v. Astrue, 649 F. 3d 193, 198 (3d Cir. 2011) (citing Kertesz v. Crescent Hills Coal Co., 788 F. 2d 158, 163 (3d Cir. 1986) (providing that an "ALJ is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences.")).

Here, the ALJ properly weighed the medical evidence and from the evidence, assigned weight to the medical opinions that were consistent with the substantial evidence of record. (Tr. 25). While Plaintiff notes that mental status examinations frequently showed her depressed mood and affect, the examinations also indicated that she was alert and cooperative, and had intact memory, fair attention and concentration, logical and goal-directed thought processes, and coherent speech, which were all objective clinical observations. (Pl.'s Br. at 22-23; see Tr. 180-81, 294, 341, 382). These examinations, which reveal some psychological symptoms but do not show significant mental deficits, are consistent with the mild-to-moderate limitations assessed by Nurse Ayers, Dr. Perdomo, and Dr. Santos in their assessments that Plaintiff had a GAF score of 60-65 (Tr. 181, 295, 342). As the ALJ noted, these mental status examinations and the GAF assessments of Drs. Perdomo and Santos and Nurse Ayers are inconsistent with Dr. Griswold's opinion that Plaintiff had very limited functioning that would preclude competitive work (Tr. 25). The ALJ also properly noted that Dr. Griswold's opinion was inconsistent with his and other doctors' reports that Plaintiff responded well to medication (Tr. 25). Thus, contrary to Plaintiff's contention, the ALJ properly concluded that Dr. Griswold's opinion was not due any significant weight under the regulations because it was

inconsistent with ssubstantial evidence of record.

## V. CONCLUSION

For the reasons stated above, the final decision entered by ALJ O'Leary is **affirmed**. An appropriate order will accompany this opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date:      January __, 2013
Original:  Clerk's Office
cc:        All Counsel of Record
           File